**AFFIRM; and Opinion Filed July 26, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-12-00641-CR**

**No. 05-12-00642-CR**

**RENDON DALE RANDLE II, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 5**
**Dallas County, Texas**
**Trial Court Cause Nos. F11-60660-L & F11-60713-L**

## MEMORANDUM OPINION

Before Justices FitzGerald, Francis, and Lewis
Opinion by Justice Lewis

A jury found appellant Rendon Randle guilty of robbery and aggravated robbery with a deadly weapon and assessed his punishment at ten years' confinement for the robbery and fifteen years' confinement for the aggravated robbery. In two issues, appellant claims the evidence is insufficient to support the conviction for aggravated robbery and the trial court erred by allowing a pocket knife admitted into evidence. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm the trial court's judgment.

In his first issue, appellant claims the evidence against him is legally insufficient to prove he committed aggravated robbery with a deadly weapon. He argues neither of the victims in the aggravated robbery could identify their assailants, he was not in possession of any property from

the aggravated robbery when he was arrested, and there is no physical evidence linking him to the aggravated robbery.

The State charged appellant with robbery, "in the course of committing theft as defined in Chapter 31, and with intent to obtain or maintain control of the property, he: (1) intentionally, knowingly, or recklessly causes bodily injury to another; or (2) intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." TEX. PENAL CODE ANN. § 29.02(a) (West 2011) (defining robbery). The State further charged appellant with using or exhibiting a deadly weapon during the offense. *See* TEX. PENAL CODE ANN. § 29.03 (West 2011) (defining aggravated robbery).

When reviewing the legal sufficiency of the evidence, we apply well-established standards. *See Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). We view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Adames*, 353 S.W.3d at 860. It is the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319.

The State's evidence implicating appellant included circumstantial evidence. In a circumstantial evidence case, it is not necessary that every fact point directly to the accused's guilt. *Temple v. State*, 390 S.W.3d 341, 359–60 (Tex. Crim. App. 2013). "It is enough if the finding of guilt is warranted by the cumulative force of all the incriminating evidence." *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The record reveals that at approximately 8:45 p.m. on the night of October 4, 2011, two African American men forced open car doors and robbed complainants, Stephanie Cabello and Jorge Garcia, while sitting in their apartment parking lot. Jorge testified he was sitting in the driver's seat when the man opened his door and told him to give him everything he had of value. Jorge reported the man searched him and his vehicle. The man on the passenger side of the vehicle leaned over and held a knife to Jorge's neck and threatened, "It's better if you just let go" to encourage him to give the assailants his cell phone. The assailants took all of Jorge's identification, credit cards, debit card, cell phone, and iPod cable. Jorge could not see the mens' faces because it was dark and the men were standing outside of the vehicle. Stephanie testified she was sitting in the passenger seat when an African American man opened her car door and held what appeared to be a pocket knife to her chest while he searched her. Stephanie claimed the man was "chubby" and wore a black shirt but she could not identify his face. The two men were seen running away, and a white vehicle was seen leaving the scene.

Later that evening, during the early hours of October 5, 2011, sixteen-year-old complainant Flavia Esquivel was awakened by noises of furniture moving in her family's apartment. Flavia did not recognize the voices she heard as her parents so she called 911. Flavia's step-father, Macario Ochoa-Hernandez, testified he, his wife, and his two younger children were asleep in his bedroom when he was awakened by intruders. Macario reported a tall African American man opened his bedroom door, turned on the light, and told him he had a "pistola." The intruder, later identified as co-defendant Pharms, grabbed Macario by the neck and used an extension cord to tie his hands and feet. Macario then saw two African American women and a second man, later identified as appellant, who he described as the "chubby one," taking things out of his apartment. Pharms, "the skinny one," kept asking Macario for a

screwdriver as he was trying to dismantle the television in the living room. The intruders removed a television, DVD players, food, a cell phone, and money from the apartment.

The police arrived at the Ochoa apartment and found both Pharms and appellant in the apartment and a television set partially hanging on the wall in the living room. Police found Macario's other property in a vehicle leaving the scene, with three African American females. The police arrested appellant, Pharms, and three African American females at or near the scene. When the police arrested appellant, he had the cell phone of Macario on his person. When the police arrested Pharms, he had a cell phone on his person which the police later determined had been taken from Jorge Garcia in the earlier vehicle robbery.

After the police left the Ochoa apartment, the family found a pocket knife in the vicinity of the hanging television, a notebook, and a lone star card – none of which belonged to anyone in the family. The police were unable to retrieve any fingerprints from the pocket knife.

During the trial, the State also offered eyewitness accomplice testimony of Marita Lane. Marita testified that on October 4, 2011, she was with appellant and three others who planned to burglarize someone's home. Marita reported that they drove to an apartment complex where appellant and Pharms got out of the car and returned after five or ten minutes when they ran back to the car and said to drive off. She reported that when the men returned, one of them had a cell phone. Marita reported that they then went to another apartment complex where she waited around a corner while appellant and Pharms "kicked in" a door. Marita, appellant, Pharms, and one other female went into the apartment while one waited in the car. Marita reported she and the others took property from the apartment to the car and then she and the other females stayed in the car and tried to leave, but before they could get away, the police stopped and arrested them.

All of this testimony was presented in evidence at the trial by eyewitnesses and an accomplice witness. Based on this evidence, a rational jury could have found beyond a

–4–

reasonable doubt that appellant committed or attempted to commit theft, and that in the course of the act he knowingly threatened imminent bodily injury or death to Jorge Garcia. The evidence also supports the fact that this threat put Jorge Garcia and Stephanie Cabello in fear of imminent bodily injury. The facts presented in evidence are enough, viewing the evidence in the light most favorable to the verdict, that a rational jury could have found appellant guilty beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). We decide appellant's first issue against him.

In his second issue, appellant claims the trial court erred in admitting into evidence a pocket knife found in the apartment robbery which was not affirmatively linked to appellant. He argues the pocket knife, which the trial court admitted for demonstrative purposes, was not linked to appellant in any way and the admission of the evidence was harmful to the appellant.

We review a trial court's admission of demonstrative evidence under an abuse of discretion standard. *Kelly v. State*, 824 S.W.2d 568, 574 (Tex. Crim. App. 1992). A trial court does not abuse its discretion if its ruling lies within the "zone of reasonable disagreement." *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). If we find error in the admission of evidence, an appellant must show that the erroneous admission of this evidence affected his substantial rights in order to warrant a reversal. TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). We review the record as a whole to determine whether the error had a substantial influence on the jury's verdict. *Mosley v. State*, 983 S.W.2d 249, 260 (Tex. Crim. App. 1998) (op. on reh'g), cert. denied, 526 U.S. 1070 (1999).

Assuming without deciding it was error to admit the pocket knife into evidence for demonstrative purposes, we find no harm was done to appellant. The jury heard testimony from

both victims in the car reporting the man who opened the passenger side door held a knife to Stephanie's chest and throat as well as Jorge's throat. The jury heard testimony of Marita that put appellant at the scene at the time of the robbery; about Pharms' possession of Jorge's cell phone; and the victims' testimony and descriptions of the assailants. The jury was able to assess the credibility and demeanor of the witnesses who testified at trial. *See Jackson*, 443 U.S. at 319; *Hooper*, 214 S.W.3d at 16–17. In light of all of the evidence, there is no reason to believe that the admission of the pocket knife substantially swayed the jury to find appellant guilty of aggravated robbery and thus, did not affect appellant's substantial rights. *See King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). We decide appellant's second issue against him.

Having decided appellant's two issues against him, we affirm the trial court's judgment.

/David Lewis/
DAVID LEWIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

120641F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

RENDON DALE RANDLE II, Appellant

No. 05-12-00641-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 5, Dallas County, Texas
Trial Court Cause No. F11-60660-L.
Opinion delivered by Justice Lewis.
Justices FitzGerald and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 26th day of July, 2013.

/David Lewis/
DAVID LEWIS
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

# JUDGMENT

RENDON DALE RANDLE II, Appellant

No. 05-12-00642-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 5, Dallas County, Texas
Trial Court Cause No. F11-60713-L.
Opinion delivered by Justice Lewis.
Justices FitzGerald and Francis participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.


Judgment entered this 26th day of July, 2013.



/David Lewis/
DAVID LEWIS
JUSTICE